UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NIKHILA REDDY SULTANPURAM,

           Plaintiff,

  v.

ANTONY BLINKEN, *et al.*,

           Defendants.

Case No. 23-cv-776 (JMC)

## MEMORANDUM OPINION & ORDER

When Plaintiff Nikhila Reddy Sultanpuram's J-1 visa expired, she was required by statute to return to her prior country of residence for two years. ECF 1 ¶ 1.[1] She applied for a waiver of that requirement because her "departure from the United States would impose exceptional hardship upon" her U.S.-citizen spouse. *Id.*; 8 U.S.C. § 1182(e). Her application has been stuck in limbo with the Department of State since February 2022. *Id.* ¶ 4. Sultanpuram brings this suit against three Department of State officials—Secretary Antony Blinken, Assistant Secretary for Consular Affairs Rena Bitter, and Chargé d'Affaires Elizabeth Jones (collectively, "Defendants" or "the agency")—contending that the agency has unreasonably delayed its adjudication of her waiver application. ECF 1. Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 8. For the reasons explained below, the Court will **DENY** Defendants' motion.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

## I. BACKGROUND

Nikhila Reddy Sultanpuram is a citizen of India who lives in Texas. ECF 1 ¶ 11. She previously entered the United States on a J-1 visa, *id.* ¶ 1, which "allows a foreign citizen to travel to the United States in order to teach or study," *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 157 (D.D.C. 2022). "A noncitizen who enters the United States on a J-1 visa to 'receive graduate medical education or training' must commit to returning to the country of his nationality or last residence" for at least two years "upon completion of the education or training." *Abuzeid v. Mayorkas*, 62 F.4th 578, 580 (D.C. Cir. 2023) (quoting 8 U.S.C. § 1182(j)(1)(C)). Under Section 212(e) of the Immigration & Nationality Act (INA), a J-1 visa holder may apply for a waiver of the two-year residency requirement if (as relevant here) "departure from the United States would impose exceptional hardship upon" the visa-holder's U.S.-citizen spouse or child. 8 U.S.C. § 1182(e).

In April 2021, Sultanpuram applied for a waiver of the two-year residency requirement. ECF 1 ¶ 19. United States Citizenship and Immigration Services (USCIS) determined that Sultanpuram's spouse, a U.S. citizen serving in the Armed Forces, would suffer "exceptional hardship" if Sultanpuram were required to leave the United States for two years. *Id.* ¶¶ 1, 21; ECF 9 at 7. In January 2022, USCIS forwarded her application to the Department of State's Waiver Review Division (WRD) which is required to "review the program, policy, and foreign relations aspects of the case, make a recommendation, and forward it to the appropriate office at [the Department of Homeland Security]." ECF 1 ¶ 3; 22 C.F.R. § 41.63(b)(2)(ii); *see Raoof v. Sullivan*, 315 F. Supp. 3d 34, 38–39 (D.D.C. 2018) (describing waiver application process). Sultanpuram's case was "documentarily complete" by February 2, 2022. ECF 1 ¶ 3; ECF 8 at 2. She has been waiting for an answer ever since. ECF 1 ¶¶ 4–5.

Sultanpuram filed this lawsuit in March 2023. ECF 1. She alleges that the State Department has violated the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, by unreasonably delaying its adjudication of her waiver application, and asks this Court to compel the State Department to act. *Id.* ¶¶ 30–40; *id.* at 8 (Prayer for Relief). Sultanpuram's J-1 status was set to expire on June 30, 2023. *Id.* ¶ 6. Although she had planned to begin a medical residency program on July 1, 2023, she alleged that she would be unable to do so without an approved waiver. *Id.* ¶ 6; *see* ECF 1-1 (acceptance letters to residency programs). Because medical residencies are highly competitive, "Sultanpuram is not in a position to defer her participation . . . and may not have another opportunity to pursue the required training." ECF 1 ¶ 7. "[I]n effect, Plaintiff's and her family's lives are on hold due to Defendants' inaction." *Id.* ¶ 41.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the delay is not unreasonable. ECF 8. Sultanpuram filed an opposition, ECF 9, and Defendants filed a reply, ECF 10. The matter is now ripe for decision.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the allegations contained in a complaint," but need not do the same for legal conclusions. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). At bottom, the complaint must contain allegations sufficient to permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (quoting *Iqbal*, 556 U.S. at 678).

### III.   ANALYSIS

Sultanpuram brings undue delay claims under the APA and the Mandamus Act. *See* ECF 1 ¶ 15. Because the two claims are essentially identical in this context, the Court analyzes them together. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. Aug. 7, 2020).

Defendants argue that Sultanpuram's claims should be dismissed because the agency's delay is not unreasonable.[2] ECF 8. Courts in this Circuit evaluate six factors, known as the "*TRAC* factors," to determine whether agency action is unreasonably delayed:

> (1) [T]he time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*)). These factors guide the unreasonable-delay analysis, but are not exclusive. *Da Costa v. Immigr. Inv. Program*

---

[2] The parties disagree about the length of the agency's delay. Defendants argue that the agency has delayed only 13.5 months—the period between the government's last action on Sultanpuram's waiver request (February 2, 2022) and the date she filed suit (March 23, 2023). ECF 8 at 2. Sultanpuram counters that, at the time she filed her opposition, her waiver request had been pending for at least 26 months—from April 2021 to June 2023. ECF 9 at 5, 8–9; *see* ECF 1 ¶ 19. As of this writing, is has been approximately 44 months since Sultanpuram applied for a waiver. There is some disagreement in this District about how to properly calculate the unreasonable delay period. *Compare Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-CV-376, 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021), *with Barazandeh v. U.S. Dep't of State*, No. 23-CV-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024). But the Court need not resolve this dispute today. Whether the delay lasted 13.5 or 44 months, the Court would conclude—for the reasons laid out below—that it cannot grant Defendants' motion to dismiss.

*Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). In immigration cases, the first and fourth factors carry the greatest weight. *Id.*

Unlike many of the cases in this District alleging unreasonable delay in the immigration context, this case does not concern an application for a visa. It centers instead on an application for a waiver of the home residency requirement.[3] The parties have identified no on-point caselaw concerning this sort of application, and there is no factual record before the Court that would suggest visa mandamus cases are analogous and therefore persuasive. Furthermore, Sultanpuram plausibly alleges that the State Department's delay has done real harm to her family and her education. The Court therefore finds that the first five *TRAC* factors weigh against dismissal, and will accordingly deny Defendants' motion to dismiss.

### A. Factors 1 and 2

The first *TRAC* factor is the "most important": whether the time the agency takes to make a decision is governed by a "rule of reason." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Sometimes—as the second *TRAC* factor provides—a "statutory scheme may supply content for this rule of reason," but the parties agree that is not the case here.[4] *In re United Mine Workers of Am. Int'l Union*, 190 F.3d at 549; *see* ECF 8 at 5; ECF 9 at 12. The Court must therefore determine whether there is nonetheless "'any rhyme or reason' for the Government's delay—in other words, 'whether the agency's response time . . . is governed by an identifiable rationale.'" *Desai v. USCIS*, No. 20-CV-1005, 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (quoting *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

---

[3] For ease of reference, the Court refers to this application as a "residency-waiver application."
[4] The Court therefore analyzes the first and second factors together. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

The D.C. Circuit has cautioned that whether the agency employs a rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Despite the fact-intensive nature of these considerations, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). Rather, "the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint. If a 'record contains enough facts to evaluate the *TRAC* factors' at that point, then a Court may appropriately decide to do just that." *Id.* (quoting *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).

Drawing all reasonable inferences in her favor, Sultanpuram has plausibly alleged that Defendants have no "rule of reason": the State Department has taken no action on her application since February 2022 and has provided no reason that "would merit the need for [this length] of processing time." ECF 1 ¶¶ 4, 28. Nothing in the record contradicts that allegation. As noted above, the parties agree that no statute or regulation supplies content for a rule of reason. *See* ECF 8 at 5; ECF 9 at 12. And unlike in other cases where defendants offered up some "identifiable rationale" that governed the agency's response time, *Desai*, 2021 WL 1110737, at *5 (quoting *Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 300), Defendants make no such attempt here. *See* ECF 8 at 4–6; *cf. Desai*, 2021 WL 1110737, at *5 (concluding that "first in, first out" rule qualifies as a "rule of reason"); *Da Costa*, 80 F.4th at 337 ("USCIS's rule of reason calls for processing Form I-526 petitions from nationals of countries as to which visas are currently available in the

order in which those petitions were received."); *Arabzada v. Donis*, No. 23-CV-655, 2024 WL 1175802, at *14 (D.D.C. Mar. 19, 2024) (finding that USCIS's "last-in-first-out" policy is a "rule of reason"); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 11 (D.D.C. 2021) (concluding that State Department policy of "prioritizing immediate relative visa applicants and K-1 fiancées of U.S. citizens, followed by family preference immigrant visa applicants," although unfavorable to plaintiffs, was a sufficient "rule of reason").

Courts may also consider "facts of which [they] may take judicial notice," alongside the facts alleged in the complaint, to assess whether a plaintiff has plausibly alleged an unreasonable delay claim. *Da Costa*, 643 F. Supp. 3d at 12. In other unreasonable-delay cases, for example, courts have considered judicially noticeable facts about the size of the applicant pool, the sorts of policy concerns the agency must weigh in making its decisions, and to what degree the COVID-19 pandemic continues to delay processing. *See, e.g.*, *Ghadami v. DHS*, No. 19-CV-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (delay not unreasonable where defendants "point[ed] to statistics showing that the State Department is reviewing approximately 12,000 [travel ban] waiver applications from multiple countries while weighing national security concerns, personal hardship issues, and potential national benefit"); *Akrayi v. U.S. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *4 (D.D.C. Mar. 9, 2023) (delay not unreasonable where the "pandemic continues to severely impact the number of visas . . . embassies and consulates abroad are able to process," and "[t]here are currently 444,828 applicants, like [the plaintiff's wife], who are awaiting interviews as of January 31, 2023."). But Defendants do not point the Court to any judicially noticeable facts to suggest that they employ a rule of reason. *See Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 18–19 (D.D.C. 2022) (denying motion to dismiss unreasonable delay claims where defendants "d[id] not

7

provide sufficient information for the Court to conclude, at the motion to dismiss stage, that [their] delay is based on a rule of reason.").

Instead, Defendants ask the Court to rely on the large body of caselaw in this District concerning unreasonable delay in the context of *visa* applications. *See* ECF 8 at 5. When it comes to visa applications, courts generally find that delays between three and five years are not unreasonable, *see Sarlak*, 2020 WL 3082018, at *6 (collecting cases), and the D.C. Circuit has held that a four-and-half-year delay in processing a visa petition was not unreasonable, *see Da Costa*, 80 F.4th at 342. But Defendants have made no arguments to persuade the Court that visa applications are analogous to residency waivers like the one Sultanpuram seeks. Perhaps processing a residency-waiver application and processing a visa application are similarly complex tasks and similarly tax agency resources. *See Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102 (requiring the court to evaluate "the complexity of the task at hand . . . and the resources available to the agency"). But it is also possible that the two processes are not meaningfully similar. *See* ECF 9 at 14 ("Immigrant visas and asylum cases are by no means even remotely similar to the waiver of the two-year home residency requirement."). Perhaps there are fewer residency-waiver applicants, or fewer steps the agency must complete to adjudicate a home residency waiver. If that is the case, a 44-month (or 13.5-month) delay that would be reasonable in the visa context might be unreasonable here. But the Court cannot tell one way or the other, because the record contains no facts about the residency-waiver application process.[5]

Finally, neither party points the Court to any case evaluating unreasonable delay in processing a residency-waiver application, nor is the Court aware of such a case. *See* ECF 8 at 5–

---

[5] There might also be some persuasive legal argument that residency-waiver applications are similar (as a matter of law) to visa petitions for purposes of an unreasonable-delay analysis—but if such an argument exists, the agency has not presented it. *See* ECF 8 at 4–6; ECF 10 at 3–5.

6; ECF 9 at 13–14; ECF 10 at 4 (recognizing that the cases the government cites "do not specifically concern applications for waiver of the home residency requirement").

The Court concludes that Sultanpuram has plausibly alleged that the time Defendants take to adjudicate residency-waiver applications is not governed by a "rule of reason." Defendants point to no judicially-noticeable facts or relevant caselaw that suggests otherwise. Therefore, this "most important" factor, *In re Core Commc'ns, Inc.*, 531 F.3d at 855, weighs against dismissal.

### B. Factor 4

The fourth *TRAC* factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Courts in this District decline to compel agency action "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Da Costa*, 643 F. Supp. 3d at 15. In the context of visa applications, this is almost always the case: the government prioritizes visa petitions in some way—perhaps based on when the petition was filed, the type of petition, or some other factor—and judicial intervention would allow the plaintiff to jump that line. *See Da Costa*, 80 F.4th at 343 ("Because USCIS prioritizes adjudication based on the date a petition was filed, . . . a court order requiring USCIS to adjudicate the Plaintiffs' Form I-526 petitions would move them ahead of longer-pending petitions."). But here, Defendants have not even argued that there *is* any such line. *See* ECF 8 at 6–8. Nor have they pointed the Court to any judicially noticeable facts that suggest such a line exists. *See id.* Instead, Defendants list the many cases in this District, all of which concern visa applications, where courts have declined to allow plaintiffs to jump the line. *See id.* As the Court has already explained, Defendants have failed to make any robust argument that those cases are analogous; it has simply assumed that they are.

In *Al-Gharawy v. U.S. Department of Homeland Security*, the court similarly found that it lacked "any evidence indicating whether such a reordering [of the applicant queue] would occur." 617 F. Supp. 3d at 19. The defendants attempted to rely (as they do here) on cases that raised serious concerns about line-jumping—but those cases "involved more detailed factual showings describing the queue of applications, their backlogs, and thus the challenges of granting relief." *Id.* Several of the decisions "rel[ied] on government declarations to establish the complexities of moving an applicant to the front of the application queue." *Id.* Because the *Al-Gharawy* court lacked that sort of information, it did not find those cases persuasive. *Id.* This Court faces the same problem: it cannot say, on the record before it, whether ordering Defendants to adjudicate Sultanpuram's application would displace an applicant ahead of her in line. The fourth *TRAC* factor therefore weighs against dismissal.

To be clear, this decision is a narrow one. The Court recognizes that "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991). Defendants need only offer some argument that the agency is in fact exercising its discretion to "allocate its resources in the optimal way." *Id.* They have not done so.

### C. Factors 3 and 5

The third and fifth *TRAC* factors overlap, in that both consider the impact of the agency's delay on the plaintiff. *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). "The third looks to whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80).

Sultanpuram plausibly alleges that the State Department's delay has caused her real, tangible harm. Without an approved waiver, she was unable to begin her medical residency program and may not have another chance to pursue this highly-competitive training opportunity. ECF 1 ¶¶ 6–7. Another agency, USCIS, has already determined that Sultanpuram's U.S.-citizen spouse would suffer "exceptional hardship" absent a waiver. *Id.* ¶¶ 1, 21; *see Milligan*, 502 F. Supp. 3d at 319 (finding that extended separation from a spouse impacted "human health and welfare"); *Ahmed v. DHS*, No. 21-CV-893, 2022 WL 424967, at *6 (D.D.C. Feb. 11, 2022) (same). The third and fifth TRAC factors therefore weigh against dismissal.

### D.  Factor 6

The sixth *TRAC* factor provides that the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Because Sultanpuram does not allege any such impropriety, *see* ECF 9 at 17, this factor is neutral. *See Da Costa*, 80 F.4th at 345–46 (finding sixth *TRAC* factor to be neutral where plaintiffs did not plausibly allege impropriety).

\* \* \*

In sum: *TRAC* factors one through five weigh against dismissal, and factor six is neutral. The *TRAC* factors counsel against dismissing Sultanpuram's case at this early stage of the litigation. *See Al-Gharawy*, 617 F. Supp. 3d at 18 ("[T]he Court lacks a sufficient basis to hold, at the motion to dismiss stage, that Plaintiffs have failed to state a plausible claim of unreasonable delay.").

\* \* \*

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim, ECF 8, is **DENIED.** Defendants shall file an answer to Plaintiff's complaint by **January 17, 2025**.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: December 20, 2024